

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Alco Corporation<br><br>Peticionaria<br><br>v.<br><br>Municipio de Toa Alta<br><br>Recurrido | Certiorari<br><br>2011 TSPR 180<br><br>183 DPR \_\_\_\_ |

Número del Caso:   CC          - 2010 - 11

Fecha: 2 de diciembre de 2011

Tribunal de Apelaciones:

Región Judicial de Bayamón y San Juan

Jueza Ponente:          Hon. Aleida Varona Méndez

Abogados de la Parte Peticionaria:

Lcdo. José A. Sánchez Álvarez
Lcdo. Christian O. Cintrón Pérez

Abogado de la Parte Recurrida:

Lcdo. Ricardo Robles Caraballo

Materia:     Cobro de Dinero

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Alco Corporation

Peticionaria

v.

CC-2010-11

Municipio de Toa Alta

Recurrido

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES

En San Juan, Puerto Rico, a 2 de diciembre de 2011.

Este recurso nos permite analizar si es viable, a la luz de la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico, Ley Núm. 81 de 30 de agosto de 1991, 21 L.P.R.A. sec. 4001 *et seq.*, que un contratista realice una obra con anterioridad a la otorgación del contrato por escrito y aún así, cobre por sus servicios si el contrato es otorgado posteriormente.

En vista del interés apremiante que le hemos reconocido a la protección de los fondos públicos, es necesario que la otorgación del contrato por escrito ocurra con anterioridad a

que el contratista empiece a realizar la obra. De esta forma, reafirmamos la "rigurosidad de los preceptos legales que rigen las relaciones comerciales entre entes privados y los municipios, que aspiran a promover una sana y recta administración pública, asunto que está revestido del más alto interés público". Fernández & Gutiérrez v. Mun. San Juan, 147 D.P.R. 824, 829 (1999). Véase, además Cordero Vélez v. Mun. de Guánica, 170 D.P.R. 237, 248 (2007).

                                  I

La peticionaria ALCO Corporation (ALCO) se dedica al suplido, venta, riego y entrega de hormigón asfáltico. En el 2002, ALCO compareció a una subasta para la realización de un proyecto de repavimentación en el Barrio Lajas, Sector Los Rivera Marrero, del Municipio de Toa Alta. El 4 de junio del mismo año, la Junta de Subastas del Municipio le notificó al Sr. Alfonso Rodríguez García, Presidente de ALCO, mediante carta, la adjudicación a su favor de la subasta #02-030. Apéndice del recurso, pág. 45. Así las cosas, ALCO comenzó a pavimentar el área correspondiente entre los días 25 y 28 de junio de 2002, sin haberse otorgado el contrato. No fue hasta el 16 de julio de 2002 que este se otorgó. En esa misma fecha se registró en los libros municipales y se envió copia a la Oficina del Contralor. El contrato disponía en la cláusula decimoctava que el término para realizar la obra era un elemento esencial del contrato y que ALCO estaba supuesta a comenzar el proyecto en o antes de cinco días luego de otorgado. Apéndice del recurso, pág. 49. Además, en la cláusula

decimocuarta se consignó que la vigencia del contrato sería de treinta días a partir del 16 de julio de 2002 hasta el 14 de agosto del mismo año. *Apéndice del recurso*, pág. 48. En otras palabras, el contrato tenía un término de treinta días para realizar la obra. Cabe señalar que esta no era la primera vez que ALCO contrataba con el Municipio de Toa Alta. Surge del expediente que en el año 2000 ganó también la buena pro para otra obra de repavimentación.

Finalizada la obra, ALCO procedió a solicitar el pago de $29,500. Para ello presentó unos conduces que reflejaban que la obra se realizó del 25 al 28 de junio de 2002. Tras varios intentos infructuosos con el Municipio, ALCO procedió a presentar una demanda en cobro de dinero. Posteriormente, presentó una moción de sentencia sumaria y varias reconsideraciones que fueron declaradas no ha lugar.

Luego, el Municipio presentó moción de sentencia sumaria. ALCO se opuso. En su moción, el Municipio alegó que "era improcedente la reclamación [de ALCO] toda vez que está sustentada en una obligación contractual supuesta que no guarda relación alguna con la reclamación del trabajo realizado". *Apéndice del recurso*, pág. 28. ALCO, por su parte, señaló que "[e]l hecho de que los trabajos hayan sido adelantados en nada responde a maquinaciones fraudulentas, ni malversación de fondos, ni favoritismos, ni cualquier otro asunto de los enfrentados por el Tribunal Supremo". *Apéndice del recurso*, pág. 38. Añadió que, contrario a querer cobrar por una obra que no guarda relación alguna con la reclamación del trabajo realizado,

"la información del contrato, así como la de la subasta, guardan completa relación con las facturas presentadas por ALCO por los trabajos realizados en el Barrio Lajas". Apéndice del recurso, pág. 39.

El Tribunal de Primera Instancia desestimó la demanda sumariamente a favor del Municipio. Entendió que la obra realizada y las fechas de los trabajos no guardaban relación con las reclamaciones presentadas. Razonó que ante la rigurosidad de los requisitos de contratación con los municipios,

> ningún contrato otorgado por un municipio puede tener fecha de vigencia posterior a la fecha de realización de la obra. En otras palabras, ALCO no puede pretender cobrarle al Municipio por unas obras realizadas anterior a la fecha de otorgación del contrato en controversia. Claramente se desprende de la prueba presentada por la propia Demandante que las obras que Alco intenta cobrar al Municipio se realizaron en fechas anteriores a la fecha de otorgación del contrato. Dicha acción no haya [sic] cabida en nuestro ordenamiento jurídico.

Apéndice del recurso, pág. 84.

A su vez, razonó que ante los requisitos de forma que exige la ley para contratar con los municipios, no se pueden otorgar contratos para cubrir hechos ocurridos con anterioridad. Apéndice del recurso, pág. 85.

Inconforme, ALCO recurrió al Tribunal de Apelaciones. Ese foro confirmó al Tribunal de Primera Instancia. Concluyó que a ALCO no le correspondía cobrar por la obra efectuada ya que la reclamación de cobro presentada contra el Municipio proviene de unos servicios prestados antes de

la vigencia del contrato presentado en evidencia. Apéndice

del recurso, pág. 169. Concluyó que

> [r]esolver de otra manera trastocaría el sistema de controles de desembolso de fondos públicos establecidos, pues se prestaría para que se convalidaran acuerdos llegados entre contratistas y municipios sin cumplir con el proceso establecido por nuestro ordenamiento.
>
> ...
>
> [E]n vista del interés que representan los fondos públicos, no estamos dispuestos a imponerle al Municipio la responsabilidad de cumplir con el pago de una deuda alegadamente contraída por servicios recibidos en una fecha en la que no se encontraba vigente contrato alguno.

Insatisfecha nuevamente, ALCO acudió ante nos. Señaló

que erró el foro apelativo intermedio al concluir que en

este caso no aplica la doctrina de enriquecimiento injusto.

Explicó que varios tribunales en otras jurisdicciones de

Estados Unidos han impuesto responsabilidad a los

municipios que se benefician injustamente de sus propios

actos *ultra vires*. También señaló que concluir que no

procedía el pago por haberse realizado la obra con

anterioridad a la otorgación del contrato desalienta que se

contrate con el gobierno, pues se lesiona su credibilidad

como ente contratante. Añadió que las enmiendas realizadas

al Art. 8.016 de la Ley de Municipios Autónomos, 21

L.P.R.A. sec. 4366, y al Art. 1 de la Ley Núm. 18 de 30 de

octubre de 1975, por la Ley Núm. 127 del 31 de mayo de

2004, 2 L.P.R.A. sec. 97, flexibilizaron los requisitos de

contratación con los municipios y "persiguen establecer

unas reglas justas y válidas que eviten que el gobierno,

incluyendo sus municipios, pierdan credibilidad a la hora de contratar". Petición de *certiorari*, pág. 6.

Asimismo, ALCO arguye que en Cordero Vélez v. Mun. de Guánica, supra, sostuvimos que si una subasta es adjudicada y notificada formalmente, y el contratista comienza a trabajar sin haber suscrito un contrato, el cobro de los trabajos queda supeditado a que se firme un contrato, aunque sea en ocasión posterior. En fin, ALCO entiende que como el contrato se otorgó con posterioridad a la realización de la obra, se registró en los libros del Municipio y se remitió a la Oficina del Contralor, esta situación es distinta de la casuística que hemos resuelto anteriormente relacionada con la contratación gubernamental.

El Municipio, en su oposición repitió que no le corresponde pagar por una obra realizada con anterioridad a la otorgación del contrato. Añadió que la determinación del foro de primera instancia al desestimar la demanda se debió a la prueba que ALCO presentó, con la que se demostró que las obras en cuestión fueron realizadas con anterioridad a la otorgación del contrato. Decidimos expedir el auto de *certiorari*. El 12 de noviembre de 2010 el caso quedó formalmente sometido.

II

Desde nuestros primeros pronunciamientos en cuanto a la contratación con los municipios, hemos dejado claro que a diferencia de la contratación entre partes privadas, "los preceptos legales que rigen las relaciones económicas entre

entidades privadas y los municipios, están revestidos de un gran interés público y aspiran [a] promover una sana y recta administración pública". Hatton v. Mun. de Ponce, 134 D.P.R. 1001, 1005 (1994). Por esa razón, en Quest Diagnostics v. Mun. San Juan, 175 D.P.R. 994, 1000 (2009) señalamos que "mediante estatutos especiales, el legislador ha impuesto requisitos y condiciones a la contratación con los municipios. A los contratos con entidades gubernamentales se les examina su validez de acuerdo con los estatutos especiales, en lugar de acudir a las teorías generales de contratos". Véanse, además Johnson & Johnson v. Mun. de San Juan, 172 D.P.R. 840, 854-855 (2007); Cordero Vélez v. Mun. de Guánica, supra, pág. 252. Por ello, es crucial que los municipios hayan actuado "acorde con los procedimientos establecidos por ley y nuestra jurisprudencia interpretativa" al momento de desembolsar fondos públicos para el pago de las obligaciones contraídas. Colón Colón v. Mun. de Arecibo, 170 D.P.R. 718, 725 (2007).

En Ocasio v. Alcalde Mun. de Maunabo, 121 D.P.R. 37, 54 (1988), enumeramos por primera vez los requisitos de forma que deben observarse al momento de pactar acuerdos con los municipios. Estos son: (1) que el acuerdo se haya hecho constar por escrito; (2) que se mantenga un registro fiel con miras a establecer la existencia del contrato; (3) que se remita copia de este a la Oficina del Contralor y; (4) que se acredite la certeza de tiempo, esto es, que el contrato se otorgó quince días antes. Íd., pág. 54. Véanse,

además, <u>Mun. Quebradillas v. Corp. Salud Lares</u>, 180 D.P.R. 1003 (2011); <u>Colón Colón v. Mun. de Arecibo</u>, <u>supra</u>, págs. 726-727; <u>Cordero Vélez v. Mun. de Guánica</u>, <u>supra</u>, págs. 248-249. Puntualizamos que es necesario que cada uno de estos requisitos se cumpla rigurosamente pues "reflejan el interés legislativo de evitar pagos y reclamaciones fraudulentas o ilegales, al crear un mecanismo de cotejo para perpetuar circunstancial y cronológicamente dichos contratos". <u>Ocasio v. Alcalde Mun. de Maunabo, supra, págs. 53-54</u>.

La necesidad de que los contratos municipales consten por escrito tiene su base en un requisito de carácter formal o sustantivo. El contrato escrito es

> la mejor evidencia de las obligaciones recíprocas que contraen las partes. Libra a las partes de futuras controversias espúreas sobre los términos acordados originalmente pues éstos quedan plasmados de forma objetiva en el acuerdo escrito. Por lo tanto, este requerimiento protege los derechos tanto del municipio como del contratista, en caso de incumplimiento.
>
> <u>Colón Colón v. Mun. de Arecibo</u>, <u>supra</u>, pág. 726.

Por consiguiente, "los tribunales debemos mirar con cautela reclamaciones fundadas y de acuerdo con contratos, en los cuales las autoridades ejecutantes no han dado cumplimiento a este mandato. Solamente así puede quedar plenamente satisfecho el sentir legislativo y la conciencia judicial adjudicativa sobre desembolsos de fondos públicos". <u>Ocasio v. Alcalde de Maunabo, supra</u>, pág. 54. Así pues, "[u]na vez se cumplen los requisitos anteriormente expuestos, los contratos son válidos,

exigibles y gozan de la publicidad requerida por nuestro ordenamiento jurídico para la sana administración de la política pública, en cuanto a la contratación municipal se refiere". Johnson & Johnson v. Mun. de San Juan, 172 D.P.R. 840, 853 (2007). Por ello, "**los municipios no deben exigir la ejecución de servicios sin haber certificado a la parte privada que el acuerdo se redujo a un contrato escrito,** que se registró y que se remitió copia de éste a la Oficina del Contralor según lo dispone la ley". (Énfasis nuestro.) Lugo v. Municipio Guayama, 163 D.P.R. 205, 217 (2004), citando a Las Marías v. Municipio San Juan, 159 D.P.R. 868, 879-880 (2003). Claro está,

> con la aprobación de la Ley Núm. 127 de 31 de mayo de 2004 (2 L.P.R.A. sec. 97), el incumplimiento con el requisito de que todo contrato sea registrado y remitido a la Oficina del Contralor tal como lo exigen el Art. 1 de la Ley Núm. 18, supra y el Art. 8.016 de la Ley de Municipios Autónomos de 1991, supra, no tiene el efecto de anular el contrato en controversia, aunque impide que puedan exigirse las prestaciones hasta tanto el acuerdo se registre y se remita a la Oficina del Contralor.
>
> Mun. Quebradillas v. Corp. Salud Lares, supra, pág. 1013.

El Art. 1.003(v) de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4001(v), define una obligación como "todo compromiso contraído legalmente válido que esté representado por orden de compra, contrato o documento similar, pendiente de pago, debidamente firmado y autorizado por los funcionarios competentes para gravar las asignaciones y que es o puede convertirse en deuda exigible". El Art. 8.004 de la misma ley, 21 L.P.R.A. sec.

4354, ordena que las obligaciones y desembolsos de fondos se hagan solo para obligar o pagar servicios autorizados por ley, ordenanza o resolución aprobada al efecto, y por los reglamentos adoptados en virtud de estas. 21 L.P.R.A. sec. 4354. Asimismo, el Art. 8.004, íd, dictamina que cuando se autorizan créditos para atender los asuntos de un año fiscal específico, **estos sean aplicados exclusivamente al pago de obligaciones legalmente contraídas y debidamente asentadas en los libros del municipio durante dicho año.** Íd. Esto significa que los fondos destinados para un año fiscal solo pueden ser utilizados para obligaciones legalmente contraídas durante ese año, no para obligaciones contraídas en años anteriores o posteriores. Es decir, "un municipio por lo general no puede pactar el pago futuro de cantidades en exceso de la asignación presupuestada para un contrato en particular". Johnson & Johnson v. Mun. de San Juan, supra, pág. 854.

Como vemos, habrá una obligación por parte del municipio **únicamente cuando exista un contrato en virtud de un compromiso legalmente válido.** Por eso es que se exige que todos los municipios mantengan "un registro de todos los contratos, escrituras y documentos relacionados que otorguen, así como de cualquier enmienda a los mismos, determinación, constancia o acción que lo resuelva, o deje sin efecto". Véanse, Art. 8.016 de la Ley de Municipios Autónomos, supra, y el Art. 1 de la Ley Núm. 18 de 30 de octubre de 1975, según enmendada, supra. Véase, además, Reglamento Núm. 5743, Sobre Registro de Contratos,

Escrituras y Documentos Relacionados y Envío de Copias a la
Oficina del Contralor, Art. 4, 28 de enero de 1998, pág. 3.

El contenido de ese registro debe incluir la siguiente
información:

> (1) Entidad gubernamental; (2) Número del
> contrato, escritura o documento relacionado; (3)
> **Fecha de otorgamiento**; (4) Contratista; (5)
> Número de seguro social federal o de cuenta
> patronal; (6) Valor o cuantía envuelta [sic] de
> manera total o mensual. Puede ser estimada; (7)
> Tomo y página del registro; (8) Propósito del
> contrato, escritura o documento relacionado; (9)
> **Vigencia. Deberán indicarse las fechas de
> comienzo y terminación**; (10) Exento. Se indicará
> si el contrato está exento o no de radicación
> [sic], según dispone el Artículo 9-a de este
> Reglamento. Si está exento, se identificará la
> razón para no radicar [sic] el mismo, utilizando
> el número de la excepción, según se indica en el
> Artículo 9-a; (11) Aprobación o dispensa. Se
> indicará si es o no un contrato que requiere una
> aprobación previa o dispensa de algún organismo
> para su otorgamiento.(Énfasis nuestro.)

> Art. 5 del Reglamento Núm. 5743, págs. 3-4.

La obligación de registrar el contrato en los libros
municipales y el requisito de que el contrato conste por
escrito responden a propósitos distintos. Así lo explicamos
en Colón Colón v. Mun. de Arecibo, supra, pág. 730:

> Existe una marcada diferencia entre unos
> requisitos y otros. La exigencia de que un
> contrato suscrito se anote en la bitácora
> municipal y su copia se remita a la Oficina del
> Contralor de Puerto Rico va encaminada a
> ofrecerle publicidad, frente a terceros, a la
> contratación municipal. De esta forma los
> terceros pueden fiscalizarla. Sin embargo, exigir
> que los contratos suscritos se reduzcan a escrito
> tiene una insoslayable dimensión de sana
> administración pública, en la medida que permite
> salvaguardar los intereses de las partes
> contratantes frente a un incumplimiento, permite
> la ordenada utilización de los fondos
> municipales, evita la incertidumbre en la
> confección del presupuesto municipal y hace
> posible la adecuada identificación de la partida

contra la cual se harán los desembolsos públicos en cumplimiento con la ley. Es decir, los primeros son más que nada de carácter procesal y de ordenada tramitación, mas el último [que el contrato conste por escrito] es sustantivo por su directa relación con la sana administración pública. En atención a lo cual, debemos concluir que el incumplimiento con el requisito de reducir a escrito el contrato municipal por fuerza afecta adversamente la eficacia de las obligaciones contraídas.

En resumidas cuentas, "el propósito de los estatutos que regulan la realización de obras y la adquisición de bienes y servicios para el Estado, sus agencias y dependencias, y los municipios, es la protección de los intereses y recursos fiscales del pueblo. De esta forma se evita el favoritismo, el dispendio, la prevaricación y los riesgos del incumplimiento". Johnson & Johnson v. Mun. de San Juan, supra, pág. 852. Véanse, además, Mun. Quebradillas v. Corp. Salud Lares, supra; Colón Cólon v. Mun de Arecibo, supra, pág. 725; Lugo v. Municipio Guayama, supra, pág. 214; Hatton v. Mun. de Ponce, supra, pág. 1005. "A tales efectos, hemos señalado que [las normas esbozadas por la ley y la jurisprudencia] deben ser *rigurosamente* observadas aun en circunstancias de emergencia". (Énfasis en el original.) Ríos v. Municipio Isabela, 159 D.P.R. 839, 846 (2003). Véanse, además, Fernández & Gutiérrez v. Mun. de San Juan, supra, pág. 833; Hatton v. Mun. de Ponce, supra, págs. 1005-09.

Por último, reiteramos que no es permisible que "personas privadas invoquen remedios en equidad frente a los municipios con los que contratan, porque 'es doctrina reiterada que dichos remedios no se aplicarán cuando

resulte(n) contrario(s) a una clara política pública plasmada en un estatuto o en la Constitución'". Mun. Quebradillas v. Corp. Salud Lares, supra, pág. 1020, citando a Las Marías v. Municipio San Juan, supra, págs. 875-876.

III

Como se desprende de los hechos reseñados, el trabajo se terminó dos semanas antes de la otorgación del contrato por escrito. ALCO aduce que el Municipio le solicitó que iniciara la obra antes de la fecha en que se otorgó el contrato por escrito. Sin embargo, ese hecho no pudo ser probado por ALCO. Más aún, aunque partiéramos de la premisa de que así fue que ocurrió, ello no valida el negocio jurídico efectuado. Recordemos lo que una vez más tenemos que repetir: "las partes privadas deben ejercer un rol más activo al contratar con los municipios". Lugo v. Municipio Guayama, supra, pág. 217. Lo prudente es que los contratistas exijan de los municipios que el acuerdo se pacte por escrito, y se certifique que se registró y se remitió a la Oficina del Contralor. Íd.

Por tanto, ALCO realizó el trabajo a finales de junio de 2002 sin tener un contrato escrito que le facultara a realizar esa obra. Con lo único que contaba era con la carta que le adjudicaba la buena pro de la subasta para realizar el proyecto. Eso no era suficiente, pues

> desde hace más de tres décadas establecimos que en nuestro ordenamiento "una agencia tiene el derecho de revocar la adjudicación de la subasta antes de que se formalice el contrato correspondiente…"… El fin social que persigue la

facultad de rechazar las licitaciones o de cancelar la subasta una vez adjudicada es conceder cierto grado de discreción y flexibilidad que le permita al ente administrativo proteger sus intereses adecuadamente…

Cordero Vélez v. Mun. de Guánica, supra, pág. 248.

Conforme a lo anterior, a pesar de que ALCO ganó la buena pro en la subasta celebrada, ello no le aseguraba que el Municipio le concedería el contrato eventualmente. En ese sentido, avalar que ALCO realizara la obra sin contar con un contrato por escrito anularía la facultad que tienen los municipios para revocar la adjudicación de una subasta antes de que se celebre el contrato.

Por otra parte, debemos tener en cuenta que "la facultad del municipio de obligar fondos públicos para el pago de una obligación, está supeditada a que se sigan los procedimientos establecidos por ley". Cordero Vélez v. Mun. de Guánica, supra, pág. 248. Por ello, nos hemos inclinado a una norma restrictiva en la contratación municipal. Íd. En este caso la realización de la obra ocurrió en el año fiscal 2001-2002, pero la otorgación del contrato ocurrió en el próximo año fiscal. Esta actuación comprometió los fondos de un año fiscal, para el pago de una obligación contraída ilegalmente en un año fiscal anterior. Todo ello se hizo en clara violación del Art. 8.004 de la Ley de Municipios, supra. Ahora bien, lo anterior no significa que no hayan obligaciones contraídas legalmente que se puedan pagar en un año fiscal subsiguiente. Siempre que una obligación se haya contraído legalmente en un año fiscal,

se justifica su pago aunque este ocurra en otro año fiscal. La justificación es que esos fondos fueron separados para ese particular. De la misma manera, tampoco se convalida lo actuado porque ambos eventos se procesaron en el mismo año fiscal. Es necesaria la otorgación previa del contrato por escrito.

Aunque la realidad es más rica que la imaginación, si validamos la contratación efectuada en este caso, en el futuro se podría dar la situación en que un contratista realice deliberadamente la obra con anterioridad, como medida de presión para garantizar la otorgación futura del contrato. Asimismo, podría ocurrir que un contratista que realizó la obra con anterioridad a la otorgación del contrato espere a que cambie la administración del Municipio para tratar de convalidar su acto, suscribiendo el acuerdo. En consecuencia, se permitiría que un contratista asuma poderes gubernamentales construyendo en épocas críticas sin un contrato formal, como por ejemplo, al concluir un año fiscal o en una etapa de transición de una nueva administración municipal. Es decir, validar la teoría que propone ALCO premiaría a quien se confabule con un funcionario corrupto del municipio para no seguir las normas de una administración pública sana, consciente de que tan pronto culmine la obra tendrá derecho a reclamar compensación sin importar que no se siguió la ley al contratar. En fin, son múltiples las posibilidades de corrupción que se podrían suscitar si permitimos el

desembolso del fondo público por una obra realizada antes de la otorgación del contrato por escrito.

Por otra parte, avalar la actuación de las partes acarrearía, en este caso en particular, darle vida retroactiva a un acto que no ocurrió como realmente se expuso en el contrato. Recordemos que la cláusula decimoctava del contrato en cuestión dispone que "el término para realizar la obra es un elemento esencial del contrato y que [ALCO] estaba supuesta a comenzar el proyecto en o antes de cinco días luego de otorgado el contrato". Es decir, ALCO podía comenzar a realizar el proyecto cinco días luego de otorgado el contrato o antes, **pero siempre luego de otorgado**. Además, ese mismo contrato señala en su cláusula décimo cuarta que su **vigencia** es de treinta días **a partir del 16 de julio de 2002** hasta el 14 de agosto del mismo año. ALCO reclama el pago de una obra construida antes de la vigencia del contrato formal.

En su alegato, ALCO hace mención del Art. 1(d) de la Ley Núm. 18, supra, y del Art. 8.016 de la Ley de Municipios Autónomos, supra, para exponer que con las enmiendas realizadas a estas leyes se flexibilizaron los requisitos de remisión de contratos al Contralor y se estableció que el incumplimiento con esos requisitos no es causa para que un tribunal competente declare la nulidad de cualquier contrato o negocio jurídico legalmente válido. Por eso ALCO entiende que no corresponde en este caso declarar nulo el negocio jurídico efectuado por las partes,

aunque el contrato se haya otorgado después de realizada la obra.

ALCO argumenta que estas enmiendas se realizaron con el propósito de promover la credibilidad del gobierno como ente contratante, al establecerse unas reglas justas y válidas que eviten que los municipios pierdan su credibilidad a la hora de contratar. Sin embargo, de una lectura de las secciones transcritas vemos que a lo que se refiere el Art. 1(d) de la Ley Núm. 18, supra, es al registro que los municipios deberán mantener de todos los contratos que otorguen -incluyendo sus enmiendas- y del envío de copia de estos a la Oficina del Contralor. La ley establece que un tribunal no declarará nulo un contrato o sus enmiendas porque no consten en los registros municipales o porque no se remitan a la Oficina del Contralor. De esas secciones no se puede interpretar que la intención del legislador fue autorizar retroactivamente un contrato que se otorgue después de realizada la obra.

Un estudio del Informe Positivo sobre la medida (P. de la C. 4243) que rindió la Comisión de Gobierno de la Cámara de Representantes nos confirma esta conclusión. Allí se explicó que la enmienda surgió de la necesidad de revocar el caso de Las Marías v. Municipio San Juan, supra. En ese caso, este Tribunal resolvió que los contratos no registrados en el Registro de Contratos de la Oficina del Contralor eran nulos e inexigibles. La Comisión de Gobierno explicó:

Entre las consecuencias injustas de la norma establecida en el caso *Las Marías*, se destaca que quien tiene control del trámite en el Registro del Contralor es la agencia o municipio y que, si la agencia incumple con este requisito, ya sea por descuido, negligencia o intencionalmente, el contrato es nulo y el ente privado no puede cobrar por los servicios o mercancías.

Informe Positivo del P. de la C. 4243 de 11 de noviembre de 2003, 6ta Sesión Ordinaria, 14ta Asamblea Legislativa, pág. 2.

Finalmente, la Comisión de Gobierno de la Cámara señaló que la enmienda, **"sin vulnerar los requisitos rigurosos de la contratación gubernamental**, protege al contratante que descansa en la tramitación legal y adecuada por las agencias y entidades gubernamentales de los requisitos exigidos por ley"**. (Énfasis nuestro.) Íd., pág. 3.

Como se puede apreciar, la razón principal que motivó a la Asamblea Legislativa a enmendar el Art. 1(d) de la Ley fue que los contratistas no son los encargados de remitir los contratos a la Oficina del Contralor. Ese es un acto que no depende de la diligencia del contratista, sino del municipio o la agencia contratante. Por ende, el legislador consideró injusto penalizar al contratista por algo que no dependía de su voluntad. Sin embargo, la Comisión de Gobierno enfatizó que la enmienda era meritoria porque no vulneraba los requisitos estrictos que imperan en la contratación gubernamental. Uno de esos requisitos es, precisamente, la existencia de un contrato escrito.

Exigirle a los contratistas que se aseguren de que haya un contrato escrito antes de realizar la obra no

depende de otra parte. Tampoco los coloca en una posición desventajosa como partes contratantes. Por el contrario, les garantiza que podrán cobrar por la obra, ya que cuentan con la garantía más segura de la existencia y alcance de la obligación contraída: el contrato escrito. Recordemos que ya en el pasado hemos dicho que "aquella parte privada que se cruce de brazos y preste servicios sin exigir prueba fehaciente de que el gobierno cumplió con su deber, se arriesga a asumir la responsabilidad por sus pérdidas". Lugo v. Municipio Guayama, 163 D.P.R. 208, 218 (2004). Véase, además Colón Colón v. Mun. de Arecibo, supra, pág. 729.

Por otro lado, ALCO asegura que en Cordero Vélez v. Mun. de Guánica, supra, sostuvimos que si una subasta es adjudicada y notificada formalmente, y el contratista comienza a trabajar sin haber suscrito un contrato, el cobro de los trabajos queda supeditado a que se firme un contrato aunque sea en ocasión posterior. Petición de certiorari, pág. 7. No tiene razón.

La controversia que tuvimos fue si procedía la acción por incumplimiento contractual y daños y perjuicios contra el municipio, en virtud de una subasta que no se adjudicó formalmente y que tampoco culminó en el otorgamiento de un contrato escrito. Resolvimos que no.

En Cordero Vélez, el Municipio de Guánica celebró una primera **subasta** en abril de 2001 para la compra de combustible hasta el 30 de junio del mismo año. A esa subasta asistió el señor Cordero Vélez, a quien

posteriormente se le notificó por carta que había obtenido la buena pro para el suministro de combustible. Sin embargo, nunca se celebró contrato. No obstante lo anterior, el municipio adquiría el combustible del garaje del señor Cordero Vélez. Posteriormente, se celebró otra subasta para el periodo de julio de 2001 hasta el 30 de junio de 2002. El señor Cordero Vélez fue el único que asistió a la subasta. Según alegó, el Secretario Municipal le indicó que le iban a adjudicar la subasta ya que había sido el único licitador. No obstante, nunca recibió notificación por escrito informándole la adjudicación de la subasta. Luego de varios trámites, el señor Cordero Vélez se enteró de que el Municipio también le compraba combustible a otro detallista. Así pues, auscultó con el Municipio la razón de la no exclusividad en la compra de combustible. El Municipio le comunicó que él no tenía una subasta adjudicada, por lo que procedió a descontinuar el pago y la compra de combustible en su estación.

Inconforme, el señor Cordero Vélez presentó una acción de cobro de dinero e incumplimiento de contrato. Alegó que con la segunda subasta se estableció una relación contractual entre el Municipio de Guánica y él. El foro de primera instancia concluyó que el Municipio de Guánica le adjudicó al señor Cordero Vélez la segunda subasta (2001-2002). Entendió que el Municipio, por voz de su Secretario Municipal, le indicó al señor Cordero Vélez que le había adjudicado la subasta. Por ello, concluyó que de la subasta nació una relación contractual entre ambas partes.

El Tribunal de Apelaciones confirmó parcialmente al foro de primera instancia. El tribunal intermedio concluyó que carecía de elementos de juicio para intervenir con la determinación del foro de primera instancia. No obstante, reconoció que el pago de una obligación municipal con fondos públicos está condicionado a que se sigan los procedimientos establecidos por ley. Por ello, ordenó que se otorgara un contrato por escrito, se inscribiera en el registro municipal de contratos y se notificara a la Oficina del Contralor junto con copia de la sentencia.

Tras un análisis de la controversia que tuvimos ante nos, señalamos con relación a la primera subasta que

> [a]unque procedía otorgar un contrato escrito y cumplir con las formalidades legales para que el municipio pudiera desembolsar fondos públicos conforme al derecho aplicable, no existe controversia respecto al cumplimiento con los términos de esta subasta.
>
> La controversia en el caso de autos gira en torno a otra subasta, la celebrada en mayo de 2001 para el año fiscal 2001-2002. Al aplicar los preceptos antes expuestos sobre el procedimiento para la celebración y adjudicación de subastas municipales, resulta indiscutible sostener que -contrario a la anterior- la subasta en cuestión no se adjudicó.
>
> Cordero Vélez v. Mun. de Guánica, supra, pág. 250.

De lo transcrito se puede apreciar que en Cordero Vélez no dijimos que la realización de una obra con anterioridad a la otorgación del contrato la convalida. No entramos a dilucidar los méritos de la primera subasta. Solo señalamos que en efecto se le adjudicó la subasta al señor Cordero Vélez, pues la Junta de Subastas le envió una carta en la que le informaba que había ganado la buena pro

y que las partes debieron haber contratado por escrito. Por consiguiente, no podemos concluir que este Tribunal validó en Cordero Vélez que las obras se pueden realizar con anterioridad a la otorgación de los contratos, pues ni tan siquiera analizamos esa vertiente. Solo resolvimos que la segunda subasta no se le adjudicó al señor Cordero Vélez, pues el hecho de que el Secretario Municipal le comentara verbalmente que la subasta se le iba a adjudicar no era suficiente para obligar al Municipio a otorgar formalmente dicha subasta y perfeccionar un contrato escrito.

Contrario a la interpretación que ALCO hace, en Cordero Vélez indicamos que no hubo una ratificación del otorgamiento de la subasta por el hecho de que el Municipio comprara en la estación del señor Cordero Vélez. Enfatizamos que

> [e]n este caso, nunca se otorgó un contrato por escrito. Tampoco se satisfizo *ninguna* de las formalidades aplicables a los contratos municipales, las cuales se exigen rigurosamente con miras a proteger el interés público. La salvedad que establece la referida Ley Núm. 127 en cuanto a que no será nulo un contrato válido que no haya sido registrado o remitido a la Oficina del Contralor, no tiene el efecto de alterar la política pública que permea la normativa en torno a la contratación municipal ni exime del cumplimiento con los requisitos antes descritos que hacen exigibles acuerdos que no son legalmente válidos. Es más, la referida disposición parte de la premisa de que se perfeccionó un contrato y de que éste es válido. Puesto que, en el caso de autos, la relación entre el señor Cordero Vélez y el municipio nunca alcanzó la obligatoriedad de un pacto bilateral, resolvemos que al no haber contrato, no procedía ordenar el cumplimiento de ninguna formalidad, contrario a lo resuelto por el Tribunal de Apelaciones.
>
> Cordero Vélez v. Mun. de Guánica, supra, pág. 252.

En fin, señalamos que "en vista del interés que representan los fondos públicos, no estamos dispuestos a imponerle al Municipio la responsabilidad de cumplir con un contrato que nunca se perfeccionó". Íd., pág. 253.

ALCO aduce que de nuestro lenguaje se puede concluir indirectamente que si se hubiese otorgado el contrato para la segunda subasta, habría procedido el pago. Ese análisis extiende demasiado lo dicho en Cordero Vélez, que es un caso sobre la validez de la adjudicación de una subasta y no sobre si una obra puede ser realizada con anterioridad a la otorgación por escrito del contrato. Contrario a lo que ALCO alega, en el mismo caso rechazamos la solución sugerida por el foro apelativo intermedio, que ordenó que se otorgara un contrato por escrito, se inscribiera en el registro municipal de contratos y se notificara a la Oficina del Contralor junto con copia de dicha sentencia para entonces validar el negocio jurídico. De haber entendido que se podía convalidar lo hecho, habríamos confirmado el remedio de que el contrato se otorgara retroactivamente, pero no lo hicimos.

No estamos avalando que un municipio se beneficie de una obra o servicio, sin pagar. Tampoco estamos ante un reclamo judicial al funcionario municipal que instó a ALCO a realizar la obra sin que mediara un contrato escrito. Por consiguiente, en lo que al municipio respecta, nos ceñimos al derecho aplicable y reiteramos que el contratista debió exigir un contrato por escrito antes de comprometer sus recursos y realizar la obra. Como toda empresa comercial,

ALCO debía conocer los requisitos de ley para contratar con un municipio y debió exigir su cumplimiento de manera activa. Véase, Lugo v. Municipio de Guayama, supra, pág. 217. La ignorancia de esos requisitos de ley no excusan su incumplimiento. Concluir lo contrario propiciaría sin quererlo, "el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia, el descuido y los riesgos de incumplimiento en la administración pública". Lugo v. Municipio de Guayama, supra, pág. 220.

> La corrupción y el desembolso indebido o ilegal de fondos públicos -en sus formas múltiples, a veces burdas y otras sofisticadas- son actos incompatibles con el sistema de gobierno democrático consagrado en nuestra Constitución y apuntalado en el respeto a la dignidad humana y los dineros del pueblo como único soberano.
>
> E.L.A. v. Soto Santiago, 131 D.P.R. 304, 322 (1992), citando A.E.E. y A.A.A. v. P.N.P., 128 D.P.R. 294, 294-295 (1991) (Voto concurrente del Juez Asociado señor Negrón García, al cual se unieron los Jueces Asociados señores Rebollo López y Andréu García.)

Al presente, la Sección 6 del Capítulo IX del Reglamento de Administración Municipal de la Oficina del Comisionado de Asuntos Municipales (O.C.A.M.), aplicable a todos los gobiernos municipales, establece:

> Sección 6: Contratos de Construcción, Obras y Mejoras Públicas
>
> Todo contrato para la construcción de obras y mejoras, debe realizarse luego de celebrada una subasta pública, cuando el costo total de la obra exceda de cien mil ($100,000) dólares. De no exceder dicha cuantía, la contratación de la obra podrá realizarse mediante la solicitud de por lo menos tres (3) cotizaciones.
>
> El **contrato** debe estipular la cuantía máxima del costo de la obra y la forma de pago e identificar

la manera en que se llevará a cabo el monitoreo o la inspección de la obra. Debe proveer además, para la retención de un diez por ciento (10%) de cada pago parcial, hasta que termine la obra o esté sustancialmente terminada, conforme los requisitos de Ley, y sea debidamente inspeccionada y aceptada por el municipio.

Los municipios deben incluir en sus contratos las cláusulas resolutorias en casos de incumplimiento y cláusulas penales o de daños líquidos por cumplimiento tardío. También deben estipular cláusulas que regulen la sub-contratación de trabajos para la obra y de relevo de responsabilidad, entre otras. Deben cumplir con la permisología requerida por las agencias concernientes y con los requisitos establecidos en este Reglamento.

Los contratos de construcción de obras y mejoras sufragados con fondos federales "Community Development Block Grant" (CDBG), deben cumplir con los requerimientos de la regulación federal aplicable y con las directrices de la Oficina.

Reglamento para la Administración Municipal, Núm. 7539 de la Oficina del Comisionado de Asunto Municipales, 18 de julio de 2008, pág. 159.

De una lectura de esta Sección, resulta inescapable concluir que el contrato escrito tiene que suscribirse previo a la ejecución de la obra. **En caso contrario, se ignoraría el interés público de regular las inspecciones de la obra y restringir los parámetros de subcontratación, entre otras medidas cautelares contempladas en la citada sección.**

Esa norma no es nueva. Al acudir al anterior Reglamento sobre Normas Básicas de O.C.A.M. nos encontramos con una prohibición expresa a la retroactividad del contrato. La Sección 5(17) del Capítulo I precisaba que la obligación es "un compromiso que esté representado por orden de compra, **contrato,** o documento similar pendiente de

pago, que deberá estar firmado por el funcionario autorizado para gravar las asignaciones en el municipio y **que puede convertirse en el futuro en deuda exigible.**" (Énfasis nuestro.) Reglamento Revisado sobre Normas Básicas para los Municipios de Puerto Rico, Núm. 3052 de la Oficina del Comisionado de Asuntos Municipales, 30 de junio de 1995, pág. 4. El resultado al que llegamos hoy es cónsono con esa reglamentación.

Ante ese cuadro, resulta inescapable que en toda obra o mejora pública municipal tiene que mediar un contrato por escrito, previo a su ejecución. No debemos excusar el cumplimiento de la normativa que impone al gobierno municipal establecer unas garantías contractuales y protecciones del interés público. Realizar una obra antes de firmar dichas cláusulas privaría al gobierno municipal y a los constituyentes de protegerse de subcontrataciones ilegales o de la realización de trabajos sin inspecciones ni supervisiones, entre otras deficiencias.

En este caso tampoco aplica la doctrina de enriquecimiento injusto. Aquí no opera la excepción que permite a un organismo gubernamental invocar los remedios en equidad para evitar un resultado contrario a una política pública estatuida en una ley o en la Constitución. Véase, Mun. Quebradillas v. Corp. Salud Lares, supra. Por el contrario, "permitir una acción en equidad contra un municipio para exigir una prestación producto de un contrato nulo violaría la política pública establecida en la Ley Municipal". Íd., pág. 1018.

Por esa razón rechazamos la posibilidad de importar el enfoque de otras jurisdicciones, bajo el cual se convalida la obligación pública sin contrato escrito, mediante la aplicación de figuras en equidad, incluyendo la doctrina de enriquecimiento injusto. Véase, para una propuesta al respecto, L. Muñiz Argüelles, Obligaciones y contratos, 77 Rev. Jur. U.P.R. 645 (2008).

A pesar de lo anterior, comprendemos que puede que en este caso parezca justo compensar al contratista. Al respecto, un reconocido autor, profesor distinguido en la materia, ha planteado una alternativa: "¿No debería responder el funcionario por el daño patrimonial que sufre el contratista que de buena fe provee un servicio por su representación engañosa de que se le ha adjudicado un contrato? Estas obligaciones de los funcionarios serían herramientas más efectivas para atajar la corrupción gubernamental, pero ciertamente deben surgir de acción por parte de la Legislatura". Muñiz Argüelles, íd., págs. 650-651.

IV

Por los fundamentos antes expuestos se confirma la sentencia emitida por el Tribunal de Apelaciones. Ese foro actuó conforme a derecho al convalidar la sentencia sumaria dictada a favor del Municipio de Toa Alta. El foro apelativo intermedio correctamente identificó el peligro de validar actos como el que aquí se suscitó, no importa las buenas intenciones de quien lo proponga. "Resolver de otra manera trastocaría el sistema de controles de desembolsos

de fondos públicos establecidos, pues se prestaría para que se convalidaran acuerdos llegados entre contratistas y municipios sin cumplir con el proceso establecido por nuestro ordenamiento". Apéndice del recurso, pág. 170. Nuestra labor indelegable de velar por la legalidad en el desembolso del dinero de nuestro Pueblo, nos compele a no admitir este tipo de contratación retroactiva. Resolver de otra forma menoscabaría la normativa rigurosa que la Asamblea Legislativa le ha impuesto a la contratación municipal.

Se dictará sentencia de conformidad.


                              RAFAEL L. MARTÍNEZ TORRES
                                   Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Alco Corporation

    Peticionaria

        v.

                         CC-2010-11

Municipio de Toa Alta

    Recurrido

SENTENCIA

En San Juan, Puerto Rico, a 2 de diciembre de 2011.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, se confirma la sentencia emitida por el Tribunal de Apelaciones.

Lo acordó y ordena el Tribunal, y lo certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez concurre con el resultado sin opinión escrita. La Jueza Asociada señora Fiol Matta disiente con opinión escrita a la que se une el Juez Presidente señor Hernández Denton.

Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Alco Corporation
    Peticionaria

*Certiorari*

v.

Municipio de Toa Alta
    Recurrido

CC-2010-11

Opinión Disidente emitida por la Jueza Asociada señora Fiol Matta a la que se une el Juez Presidente señor Hernández Denton

En San Juan, Puerto Rico, a 2 de diciembre de 2011.

La Opinión del Tribunal en este caso parte de la premisa equivocada de que la totalidad de la prestación de la parte peticionaria se hizo antes de otorgarse el contrato por escrito. Al hacerlo, no discute ni precisa las características y elementos constitutivos del tipo de contrato acordado en este caso. Tratándose de un contrato de ejecución de obra, en el cual la prestación principal tiene lugar al <u>entregarse</u> la obra acordada, lo que nos correspondía determinar es si antes de dicha entrega se habían cumplido los requisitos para el perfeccionamiento de la obligación establecidos en la normativa sobre

contratos municipales. La Opinión mayoritaria también añade, innecesariamente, un requisito formal constitutivo a los contratos municipales que no está contemplado por la Ley de Municipios Autónomos, Ley Núm. 81 de 30 de agosto de 1991, 21 L.P.R.A. sec. 4001 *et seq*, entiéndase, el tener que plasmar el contrato por escrito antes de que se lleve a cabo la obra solicitada. Al no coincidir con el análisis mayoritario, me veo en la obligación de disentir.

I.

El 4 de junio de 2002, el Municipio de Toa Alta notificó a la peticionaria ALCO que recibió la buena pro de la subasta 02-030 para un proyecto de repavimentación en el Barrio Lajas de dicho Municipio. El contrato de ejecución de obra se perfeccionó el 16 de julio de 2002, fecha en la que se puso por escrito, se registró en los libros municipales y se envió copia a la Oficina del Contralor. El costo de la obra ascendía a $29,500. El contrato tendría una duración de aproximadamente un mes.[1] No hay controversia en cuanto a que dicho contrato cumplió con los cuatro (4) requisitos formales que exige La Ley de Municipios Autónomos para los contratos municipales.

Según la peticionaria, el Municipio de Toa Alta le solicitó que iniciara el trabajo de repavimentación antes de la fecha en que se perfeccionaría formalmente el

---

[1] El contrato dispone que éste estaría vigente del 16 de julio de 2002 al 14 de agosto de 2002.

contrato.[2] De lo que no hay controversia es que a finales de junio de 2002, ALCO llevó a cabo el trabajo de repavimentación según descrito en la subasta 02-030 y, eventualmente, en el contrato de ejecución de obra del 16 de julio.[3] Es decir, realizó su trabajo antes de perfeccionarse el contrato.[4] Sin embargo, la certificación final de la obra, con miras a que ésta fuese aceptada y recibida por el Municipio de Toa Alta, se hizo el 31 de julio de 2002, es decir, durante el término de vigencia del contrato.[5] No obstante, el Municipio rehusó certificar la obra y no desembolsó pago alguno a favor de ALCO.

Tras unas gestiones de cobro infructuosas, ALCO presentó una demanda en cobro de dinero contra el Municipio de Toa Alta reclamando la cantidad de $29,500 por concepto del trabajo realizado como una deuda vencida, líquida y exigible. Ambas partes solicitaron sentencia sumaria. El Municipio alegó que era "improcedente la reclamación presentada en su contra por estar sustentada en una

---

[2] Los tribunales inferiores no hicieron determinación de hecho sobre esta alegación, dado que el Tribunal de Primera Instancia desestimó la demanda mediante sentencia sumaria.

[3] Los trabajos fueron realizados los días 25, 26, 27 y 28 de junio de 2002.

[4] El contrato firmado el 16 de julio proveía para la entrega de certificaciones parciales a ser aprobadas por un representante del municipio. No obstante, como en este caso no hubo desfile de prueba ni juicio en sus méritos, no se sabe si dicha obligación contractual era de naturaleza esencial.

[5] También presentó una certificación adicional reclamando el 10% del precio convenido reservado por el Municipio para cubrir posibles desperfectos y vicios de la obra.

supuesta obligación contractual que no guarda relación alguna con la reclamación por el trabajo realizado".[6] Adujo, en particular, que como el trabajo de repavimentación se llevó a cabo antes de que el contrato se pusiera por escrito, según exige la normativa relativa a los contratos municipales, no estaba obligado a cumplir el mismo.[7]

El Tribunal de Primera Instancia declaró con lugar la moción de sentencia sumaria presentada por el Municipio y desestimó la demanda. En síntesis, determinó que ALCO no podía cobrar por un trabajo realizado antes que se perfeccionara el contrato de ejecución de obra. Inconforme, ALCO recurrió al Tribunal de Apelaciones. El foro intermedio, en lo pertinente, confirmó el fallo del tribunal de instancia. El Tribunal de Apelaciones determinó que como el contrato perfeccionado el 16 de julio no hacía mención de que la obra había comenzado antes de la fecha de vigencia del contrato y, además, disponía que cualquier cambio al mismo debía hacerse por escrito, ALCO no podía

---

[6] Sentencia del Tribunal de Apelaciones, p. 2; Apéndice petición de *certiorari*, p. 160.

[7] Tampoco fue controvertido el hecho de que el trabajo realizado con 2 semanas de adelanto fue el mismo que se pactó en el contrato del 16 de julio. De igual forma, ALCO reconoce que si no se hubiera perfeccionado el contrato el 16 de julio, cumpliéndose con los requisitos formales del ordenamiento sobre contratos municipales, no podría exigir el pago por la obra ejecutada. Su argumento se centra en que, una vez se perfeccionó el contrato por escrito y se cumplieron con los demás requisitos de forma, podía exigir la contraprestación correspondiente al Municipio de pagarle por el trabajo hecho anticipadamente.

reclamar pago alguno por trabajos realizados antes del perfeccionamiento.

Inconforme, ALCO recurrió ante este Tribunal. En lo pertinente, alegó que el Tribunal de Apelaciones erró al concluir que ALCO no podía reclamar el pago por la obra ejecutada, porque el trabajo sobre la obra se hizo antes de haberse perfeccionado el contrato. En particular, ALCO cuestiona si se puede "desestimar una demanda sobre cobro de dinero de unos trabajos debidamente subastados, presupuestados, realizados al amparo de un contrato escrito y firmado, archivado en los libros del Municipio y remitido a la Oficina del Contralor, [por el hecho de que] el contratista respondió a la petición [del] Municipio de adelantar los trabajos unos días".[8] Con ello, alega la peticionaria, se lesionaría la credibilidad del gobierno como ente contratante. Por su parte, el Municipio se centra en el hecho de que "las obras en cuestión fueron realizados [sic] con anterioridad a la prestación [sic] del [contrato]".[9] Además, alegó que no se demostró que el Municipio solicitara que se adelantara la obra. Finalmente, argumenta que los contratos "no pueden ser otorgados para cubrir hechos ocurridos antes de la otorgación del mismo [sic]".[10]

_____

[8] Petición de *certiorari*, p. 5.

[9] Oposición a petición de *certiorari*, p. 4.

[10] *Id.*, p. 5.

II.

La facultad de los municipios para contratar, y el consiguiente derecho de los contratistas a reclamar que éstos cumplan sus prestaciones, está condicionada a que el contrato acordado cumpla con unos requisitos formales.[11] Éstos son: (1) que el acuerdo se haya hecho constar por escrito, (2) que se mantenga un registro fiel con miras a establecer la existencia del contrato, (3) que se envíe copia de éste a la Oficina del Contralor y (4) que se acredite la certeza de tiempo, esto es, que el contrato se otorgó no más de quince días antes.[12] Estos requisitos deben ser observados rigurosamente "ya que su ausencia priva de eficacia y validez el acuerdo con el municipio".[13] Es decir, "ningún Municipio podrá satisfacer deuda alguna que no surja de un contrato que conste por escrito y que a su vez haya sido registrado y remitido a la Oficina del Contralor".[14] Para que los contratos otorgados por un

---

[11] 21 L.P.R.A. 4051; Johnson & Johnson v. Mun. de San Juan, 172 D.P.R. 840, 852 (2008); Cordero Vélez v. Mun. de Guánica, 170 D.P.R. 237, 248 (2007); Colón Colón v. Mun. de Arecibo, 170 D.P.R. 718, 725 (2007).

[12] Municipio de Quebradillas v. Corporación de Salud de Lares, 2011 T.S.P.R. 27, p. 10; Fernández & Gutiérrez v. Mun. San Juan, 147 D.P.R. 824, 830 (1999); Hatton v. Mun. de Ponce, 134 D.P.R. 1001, 1006 (1994).

[13] Municipio de Quebradillas v. Corporación de Salud de Lares, supra, p. 11 (Énfasis suplido). El requisito de remitir copia del contrato al Contralor ya no anula el negocio jurídico pero impide que se puedan exigir las prestaciones hasta tanto se cumpla. Id. Véase además Lugo v. Municipio de Guayama, 163 D.P.R. 208, 215 (2004).

[14] Municipio de Quebradillas v. Corporación de Lares, supra, p. 12.

municipio sean válidos y tengan, por lo tanto, efecto vinculante entre las partes, tienen que cumplir con estos requisitos formales.[15] Un acuerdo en contravención a estas normas es ineficaz.[16]

Como bien dice la Opinión mayoritaria, estos requisitos, y su rigurosa observancia, tienen como objetivo la sana y recta administración pública.[17] Hemos afirmado que este objetivo es "del más alto interés público".[18] El propósito de esta política no es favorecer al municipio sino proteger los fondos públicos.[19] Consistentemente hemos manifestado que la buena administración de un gobierno es una virtud de democracia, y parte de una buena administración implica llevar a cabo sus funciones como comprador con eficiencia, honestidad y corrección para proteger los intereses y el dinero del pueblo al cual dicho gobierno representa.[20] De esta manera se evita "el

---

[15] Colón Colón v. Mun. de Arecibo, *supra*, pp. 725-726.

[16] Fernández & Gutiérrez v. Mun. San Juan, *supra*, p. 833.

[17] Opinión mayoritaria, p. 7; Colón Colón v. Mun. de Arecibo, *supra*, p. 724.

[18] Municipio de Quebradillas v. Corporación de Saluid de Lares, *supra*, p. 12; Johnson & Johnson v. Mun. de San Juan, *supra*, p. 852. Véase además Hatton v. Mun. de Ponce, *supra*, p. 1005. "[L]os preceptos legales que rigen las relaciones económicas entre entidades privadas y los municipios están revestidos de un gran interés público y aspiran promover una sana y recta administración pública".

[19] Municipio de Quebradillas v. Corporación de Salud de Lares, *supra*, p. 14.

[20] Cordero Vélez v. Mun. de Guánica, *supra*, p. 245; Mar-Mol Co., Inc. v. Adm. Servicios Gens., 126 D.P.R. 864, 871 (1990).

favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia y el descuido de otorgarse los contratos, y minimizar los riesgos de incumplimiento".[21] Por tanto, es deber de los tribunales evitar que se burlen las disposiciones legales que protegen los fondos públicos y la integridad en la gestión gubernamental.[22]

El cumplimiento con los requisitos formales mencionados tiene un "carácter constitutivo respecto a la eficacia de las obligaciones contraídas".[23] Un contratista que pacte con un municipio sin que se cumplan estos requisitos asume el riesgo de no poder exigirle a la entidad municipal el cumplimiento de la obligación. Mientras haya incumplimiento, el contratista no tendrá causa de acción.[24] En particular, hemos insistido en la necesidad de que los contratos municipales se pongan por escrito, elemento que hemos descrito como "indispensable […] para que lo convenido tenga efecto vinculante".[25]

---

[21] Mar-Mol Cu., Inc. v. Adm. Servicios Gens., *supra*, p. 871.

[22] Municipio de Quebradillas v. Corporación de Salud de Lares, *supra*, p. 10; Hatton v. Mun. de Ponce, *supra*, p. 1006.

[23] Colón Colón v. Mun. de Arecibo, *supra*, p. 727 (Énfasis suplido).

[24] Véase *Id.*, p. 731.

[25] *Id.*, p. 726; Quest Diagnostics of Puerto Rico v. Mun. de San Juan, 2009 T.S.P.R. 77, p. 6, 176 D.P.R. ___ (2009). Controversias relacionadas a contratos verbales con entidades municipales han sido la principal generadora de nuestra jurisprudencia en esta área y consistentemente hemos rechazado darle eficacia a estos acuerdos. Véase, por ejemplo, Municipio de Quebradillas v. Corporación de Salud de Lares, *supra*; Colón Colón v. Mun. de Arecibo, *supra*;

(continúa...)

Ahora bien, una vez se cumplen los requisitos formales de contratación, los contratos entre la entidad municipal y el contratista son válidos y exigibles.[26] En esos casos, lo que resta es analizar el negocio jurídico pactado y las obligaciones asumidas, como ocurre con cualquier otra relación contractual.[27] En _De Jesús González v. A.C._ manifestamos que "[c]uando el Estado contrata, la interpretación del contrato debe hacerse como si se tratara de una contratación entre dos personas particulares […] Ello significa que una vez el Estado suscribe un contrato con una persona privada, ambos están obligados por las normas generales relativas a los contratos y sus correspondientes interpretaciones a la luz de nuestros pronunciamientos aplicables".[28] Claro está, será a partir del cumplimiento con los requisitos de forma que el municipio quedará obligado frente al contratista y éste podrá requerirle el pago del precio acordado.

---

_Fernández & Gutiérrez v. Mun. San Juan_, _supra_; _Morales v. Municipio de Toa Baja_, _supra_. Por otro lado, en aquellos casos donde el contrato consta por escrito y se cumplieron los demás requisitos formales, hemos sostenido las obligaciones pactadas. Véase, por ejemplo, _Johnson & Johnson v. Mun. de San Juan_, _supra_.

[26] _Johnson & Johnson v. Mun. de San Juan_, _supra_, p. 853. Véase además _Fernández & Gutiérrez v. Mun. San Juan_, _supra_, p. 833.

[27] _Johnson & Johnson v. Mun. de San Juan_, _supra_, p. 855.

[28] 148 D.P.R. 255, 276 (1999).

La Opinión del Tribunal acepta que en este caso se cumplieron los cuatro requisitos de la Ley Núm. 81,[29] pero añade un quinto requisito de forma que no está establecido en la Ley de Municipios Autónomos: que el contrato se ponga por escrito antes que comiencen las labores del contratista. Esto con el propósito de evitar, según la mayoría, que un contratista realice una obra sin contrato y luego exija el pago al municipio. Sin embargo, la mayoría olvida que, como la firma del contrato es requisito *sine qua non*, si el contratista lleva a cabo la obra y no se firma un contrato, <u>no podrá exigirle nada al municipio</u>. Es más, en una situación de ejecución de obra, como la presente, nada obliga al municipio firmar el contrato y pagar la obra. Ahora bien, si el propio municipio <u>decide voluntariamente</u> obligarse después de realizada la obra, observando los requisitos de la Ley de Municipios Autónomos, no hay nada en dicha Ley que le prohíba hacerlo.[30]

---

[29] Opinión mayoritaria, p. 2.

[30]  Nada impide que, por vía de reglamentación, se añadan elementos de forma a la contratación municipal. No obstante, ese no es el caso ante nuestra consideración. la controversia de autos se limitó a la interpretación de la Ley Núm. 81 y los requisitos constitutivos establecidos en dicho estatuto.

La Opinión mayoritaria propone que el principio de irretroactividad se puede inferir de la Sección 6 del Capítulo IX del Reglamento de Administración Municipal de la Oficina del Comisionado de Asuntos Municipales (O.C.A.M.). Opinión mayoritaria, p. 25. Sin embargo, la propia mayoría reconoce que era el Reglamento <u>anterior</u>, Reglamento sobre Normas Básicas de O.C.A.M., el que contenía esa prohibición expresa. Es decir, que el Reglamento actual <u>eliminó</u> la prohibición absoluta a la

(continúa...)

III.

Aun si coincidiéramos con la mayoría en que el contrato debe perfeccionarse por escrito antes que se lleve a cabo el trabajo solicitado, ello no resuelve la controversia que nos plantea este caso. No podemos perder de perspectiva que estamos ante un contrato de arrendamiento de obra. Por tanto, para determinar cuándo debió haberse perfeccionado el contrato en este caso, es necesario examinar esta figura contractual antes de fijar el momento en que debieron cumplirse los requisitos de forma de la Ley de Municipios Autónomos, incluso el nuevo requisito de irretroactividad establecido por el Tribunal. No propongo que se ignoren los estatutos especiales y se recurra exclusivamente a la teoría general de los contratos. Más bien, recuerdo que, como tribunal, nos corresponde examinar la interacción entre la ley especial y las diferentes figuras de nuestro derecho contractual, pues no todos los contratos son iguales.

Mediante el contrato de arrendamiento de obra, también conocido como contrato de obra, contrato de empresa o contrato de ejecución de obra,[31] una parte se obliga a ejecutar una obra a cambio de un precio establecido

_____

contratación retroactiva que establecía el Reglamento derogado. No creo que este historial nos permita afirmar que el Reglamento actual contiene una prohibición similar.

[31] J.M. Lete del Río & J. Lete Achirica, Derecho de Obligaciones, Vol. II, Contratos, Thomson Aranzadi, Navarra, 2006, p. 515; F. Martínez Mas, El Contrato de Obra analizado para constructores y promotores, Ciss Praxis, Valencia, 2000, p. 15.

previamente.[32] En particular, como nos explica Puig Brutau,
éste "es el contrato por el que una de las partes […] se
obliga frente a la otra […] a la producción de un
determinado resultado con su actividad independiente, a
cambio de un precio cierto".[33] La correlación entre el
contrato de arrendamiento de obra y la producción de un
resultado es una característica universalmente aceptada por
la doctrina.[34] A igual conclusión ha llegado, consisten-
temente, el Tribunal Supremo de España.[35] Como se desprende

---

[32] Master Concrete Corp. v. Fraya, S.E., 152 D.P.R. 616,
623. El contrato de arrendamiento de obra está recogido en
los artículos 1480 a 1492 del Código Civil, 31 L.P.R.A. §§
4121-4133.

[33] J. Puig Brutau, Fundamentos de Derecho Civil, T. II, Vol.
2, 1956, p. 438 (Énfasis suplido). Véase, además, J.R.
Vélez Torres, Curso de Derecho Civil, T. IV, Vol. 2,
Derecho de Contratos, Revista Jurídica de la U.I.P.R.,
1990, p. 326.

[34] Véanse M. Albadalejo, Derecho Civil, T. II, Derecho de
Obligaciones, Vol. 2, Los contratos en particular y las
obligaciones no contractuales, p. 309: "[E]n el [contrato
de obra] se promete un resultado". (Énfasis en original);
J.M. Manresa Navarro, Comentario al Código Civil Español,
T. X, Madrid, 1950, p. 894; J. Santamaría, Comentario al
Código Civil, T. II, Ed. Revista de Derecho Privado,
Madrid, 1958, p. 637; P. González Poveda en I. Sierra Gil
de la Cuesta, Comentario del Código Civil, Libro IV, Ed.
Bosch, 2000, p. 620; M. Medina De Lemus, Derecho Civil, T.
II, Obligaciones y Contratos, Vol. 2, Contratos en
Particular, Ed. Dilex, Madrid, 2005, p. 145, quien enfatiza
en que dicho resultado conlleva algo "completo y acabado,
independientemente del trabajo o tiempo que costó
obtenerlo".; J.M. Lete del Río & J. Lete Achirica, Op.Cit.,
p. 515; R. Hernández Bobadilla, El Contrato de Obra y su
Regulación en la Legislación Guatemalteca, Guatemala, 1966,
p. 17; F. Martínez Mas, Op.Cit., p. 18, quien recalca que
se trata de un "determinado resultado".

[35] Véanse Sentencia del 10 de mayo de 1997; Sentencia del 30
de enero de 1997, Aranzadi, Repertorio de Jurisprudencia
845, p. 1320; Sentencia del 4 de noviembre de 1989;
Sentencia del 30 de mayo de 1987, Sentencia del 6 de
(continúa...)

del propio término, el énfasis en el resultado apunta, necesariamente, hacia un elemento temporal: se trata de la culminación de un proceso productivo.[36]

A.

En el contrato de arrendamiento de obra, las obligaciones principales del contratista son: (1) realizar la obra y (2) **entregarla**.[37] Por su parte, el dueño de la obra tiene dos obligaciones esenciales: (1) **recibir** la obra[38] y (2) pagar el precio en la forma, cuantía y tiempo convenidos.[39] Nos corresponde ahora analizar por separado estas prestaciones para luego discutir cómo interactúan entre sí.

---

noviembre de 1982; Sentencia del 19 de diciembre de 1964, Aranzadi, Repertorio de Jurisprudencia 5900, p. 3600; Sentencia del 23 de noviembre de 1964, Aranzadi, Repertorio de Jurisprudencia 5453, p. 3294, en donde se conecta el concepto del resultado con el de finalidad.

[36] Según la Real Academia de la Lengua Española, la palabra resultado significa: "Efecto y consecuencia de un hecho, operación o deliberación". Diccionario de la Lengua Española, vigésima primera edición, 1992.

[37] Master Concrete Corp. v. Fraya, S.E., *supra*, p. 624. Véase además M. Albadalejo, *Op.Cit.*, p. 317.

[38] Puig Brutau, *Op.Cit.*, p. 468; F. Puig Peña, Tratado de Derecho Civil Español, T. IV, Vol. 2, Madrid, Ed. Revista de Derecho Privado, 1951, p. 302.

[39] Master Concrete Corp. v. Fraya, S.E., *supra*, p. 624, citando a M. Albaladejo, Derecho Civil, 8va ed., Barcelona, Ed. Busch, 1989, p. 49. El artículo 1491 del Código Civil dispone: "Si no hubiere pacto o costumbre en contrario, el precio de la obra deberá pagarse al hacerse la entrega". 31 L.P.R.A. § 4132 (Énfasis suplido). Como puede notarse, en el contrato de arrendamiento de obra el momento crucial de las prestaciones es la entrega y recepción de la obra, no el momento en que se realizó el trabajo.

Si bien la característica fundamental del contrato de arrendamiento de obra es la producción de un resultado, el proceso que conlleva dicho producto está compuesto, a su vez, de un trabajo inicial y una entrega final. Ahora bien, dada la importancia del resultado, el trabajo inicial es únicamente un primer paso en el cumplimiento de la prestación a la que se obliga el contratista. Es decir, no se trata de dos prestaciones independientes -trabajo inicial y entrega final- sino una sola obligación de producir un resultado que, aunque comienza con el trabajo, culmina con su entrega.[40] Por otra parte, la entrega constituye el momento definitivo en que el contratista cumple con su obligación. Si un contratista ejecuta la obra pero no la entrega, no habrá cumplido con su prestación. Por tanto, realizar la obra únicamente resulta insuficiente.[41] La entrega de la obra completada constituye el cumplimiento definitivo de la prestación por parte del contratista. Por tal razón, la doctrina ha enfatizado considerablemente el elemento de la entrega al discutir la figura del contrato de arrendamiento de obra como elemento

---

[40] F. Martínez Mas, *Op.Cit.*, p. 45: "Las dos obligaciones fundamentales del constructor son: la realización de la obra conforme a lo pactado y la entrega de la misma". Véase además R. Hernández Bobadillo, *Op.Cit.*, p. 17.

[41] Como explica Medina de Lemus: "La primera obligación del contratista es realizar la obra en las condiciones pactadas" M. Medina de Lemus, *Op.Cit.*, p. 146 (Énfasis suplido). Véase además M. Albaladejo, *Op.Cit.*, p. 317; R. Hernández Bobadillo, *Op.Cit.*, p. 17: "[La promesa del resultado] consiste, en primera forma, en un acto de producción o creación en sentido propio, o sea […] en la realización de una obra". (Énfasis suplido).

central de la obligación del contratista.[42] Igual ocurre en la jurisprudencia del Tribunal Supremo de España.[43]

Como consecuencia de la importancia del resultado en este contrato, algunos tratadistas han enfatizado que, más que ejecutar la obra, la prestación _principal_ del contratista es, precisamente, _entregar_ la obra ejecutada. Nos explica Castán Tobeñas que "la prestación de la cosa (debidamente confeccionada), eso es, su _enajenación_, aparece como la _prestación principal_, siendo la _realización_ de la cosa únicamente el _medio_ para hacer posible aquélla".[44] Es decir, el trabajo sobre la obra es el medio, pero su entrega es el fin. Para Martínez Mas, la entrega de

---

[42] P. González Poveda, _Op.Cit._, p. 666: "Finalizada la obra, el contratista viene obligado a entregarla en el modo y dentro del plazo convenidos".; M. Medina de Lemus, _Op.Cit._, p. 149: "Evidentemente la obra debe ser entregada una vez hecha".; M. Albadalejo, _Op.Cit._, p. 317; J.M. Manresa y Navarro, _Op.Cit._, p. 918, enfatizando la importancia de la entrega; J. Santamaría, _Op.Cit._, pp. 636-637.

[43] Sentencia del 18 de abril de 1979, Aranzadi, Repertorio de Jurisprudencia 1406, p. 1156, explicando que la obligación del dueño de pagar la obra es "a cambio de [la] _prestación_ [del contratista] de _entrega_ de la obra ejecutada". (Énfasis suplido); Sentencia del 26 de octubre de 1978, Aranzadi, Repertorio de Jurisprudencia 3286, en donde el alto foro español resolvió que no hay deber de recibir si el contratista no cumplió "la obligación de entregar [la obra] en el tiempo y forma convenidos".; Sentencia del 5 de febrero de 1975, Aranzadi, Repertorio de Jurisprudencia 330, p. 252: "[El contratista] no cumplió con su _obligación_ de _entregar la obra_ en el plazo convenido". (Énfasis suplido). Véanse, además, Sentencia de 30 de enero de 1997, Aranzadi, Repertorio de Jurisprudencia 845; Sentencia del 1 de junio de 1982, Aranzadi, Repertorio de Jurisprudencia 3401.

[44] (Énfasis suplido). J. Castán Tobeñas, _Derecho Civil Español, Común y Foral_, T. IV, Derecho de Obligaciones, las particulares relaciones obligatorias, 9na ed., Madrid, 1961, p. 455.

la obra es parte inherente de su terminación y, por tanto, del cumplimiento de la obligación por parte del contratista.[45] Nos dice el tratadista que "[l]a **última obligación del constructor en la fase final del cumplimiento del contrato, es la entrega de la obra al promotor**".[46] Es de notar que la obligación del dueño de pagar no surge cuando el contratista termina de ejecutar la obra, **sino, efectivamente, cuando la entrega** y el dueño la recibe.

El contrato de arrendamiento de obra es "un contrato bilateral. Es decir, que las personas que lo celebran se imponen obligaciones recíprocas".[47] Por su propia naturaleza, las contraprestaciones en el contrato de arrendamiento de obra tienen un orden temporal. Primero, hace falta que el contratista ejecute y entregue la obra. Sólo entonces el dueño tiene la obligación de recibirla y pagar. Como explican Lete del Río y Lete Achirica, la recepción de la obra es "otra de las obligaciones del comitente, correlativa a la del contratista de entregar la obra".[48] A igual conclusión llegó el Tribunal Supremo de España:

> [E]l arrendamiento de obra […] es un
> contrato bilateral originador de obligaciones

---

[45] F. Martínez Mas, *Op.Cit.*, p. 50.

[46] *Id* (Énfasis suplido).

[47] *Id.*

[48] J.M. Lete del Río & J. Lete Achirica, *Op.Cit.*, p. 521 (Énfasis suplido).

recíprocas, en el que el crédito del contratista no se dirige escuetamente a la prestación de pago del precio por parte del comitente, sino a una contraprestación, eso es, a la prestación del cobro del precio <u>a cambio de su prestación de entrega de la obra ejecutada.</u>[49]

B.

Como hemos dicho, la prestación principal del contratista en el contrato de arrendamiento de obra es la producción y entrega de determinado <u>resultado</u>.[50] Esto es, precisamente, lo que lo distingue del contrato de arrendamiento de servicios. Al respecto, nos ilustra Vélez Torres que en el contrato de arrendamiento de servicios "lo prometido por el contratista es la <u>energía del trabajo</u>, mientras que en [el arrendamiento de obras] lo que se promete es la obra o <u>resultado final del trabajo</u>".[51] Puig Peña acoge el mismo criterio: "[E]l contratista no promete sólo su trabajo, sino el resultado del mismo".[52] Esto corresponde a la contraprestación que debe realizar el dueño de la obra, pues éste debe, además de pagar el precio pactado, <u>recibir</u> el la obra. En otras palabras, más que el pago de un precio cierto a cambio de un esfuerzo realizado, en el contrato de arrendamiento de obra el dueño realiza un pago al contratista por un resultado entregado y recibido.

---

[49] Sentencia del 18 de abril de 1979, Aranzadi, Repertorio de Jurisprudencia 1406, p. 1156. (Énfasis suplido).

[50] Puig Peña, *Op.Cit.*, p. 299.

[51] Véase Vélez Torres, *Op.Cit.*, p. 325 (Énfasis suplido).

[52] Puig Peña, *Op.Cit.*, p. 299.

La doctrina científica distingue unánimemente el contrato de arrendamiento de obra del contrato de arrendamiento de servicio, estableciendo claramente la diferencia entre el resultado a entregarse y el esfuerzo realizado.[53] Lo mismo ocurre con la jurisprudencia española.[54]

Lo anterior es producto, como nos explica Puig Brutau, de que en el contrato de arrendamiento de obra el

---

[53] J. Santamaria, *Op.Cit.*, p. 637: "La diferencia de mayor relieve entre el arrendamiento de obra (*locatio operis*) y el de servicios (*locatio operarum*) está en su aspecto económico, pues en el contrato de trabajo se retribuye el tiempo y en el de obras el resultado". (Énfasis suplido); J.M. Lete del Río & J. Lete Achirica, *Op.Cit.*, p. 515: "Lo que caracteriza a este contrato es que el empresario o contratista se obliga a prestar no el trabajo como tal, sino el resultado del mismo (la obra), sin consideración al esfuerzo necesario para obtenerlo". (Énfasis suplido). Incluso, el autor señala que, salvo casos particulares donde las características personales del contratista fueron el factor principal en su selección, no es necesario que el trabajo haya sido realizado por éste; J. Castán Tobeñas, *Op.Cit.*, p. 454: "La verdadera nota distintiva del contrato de empresa es, como ya vimos, la de que lo prometido y qué constituye su objeto no es la energía del trabajo o el trabajo como tal (al modo que lo es en el arrendamiento de servicios), sino la obra o resultado del trabajo". (Énfasis en original). Véase, además, M. Albaladejo, *Op.Cit.*, p. 309; J.M. Manresa y Navarro, *Op.Cit.*, p. 923.

[54] Sentencia del Tribunal Supremo de España del 10 de junio de 1975, Aranzadi, Repertorio de Jurisprudencia 3265, p. 2407. Según el alto foro español, la diferencia entre el contrato de arrendamiento de servicios y el contrato de arrendamiento de obra:

> …radica en el objeto inmediato de la obligación del arrendador, de manera que si éste se obliga a la prestación de servicios o de trabajo o de una actividad en sí mismo, no del resultado, que aquella prestación produce, el arrendamiento es de servicios y, en cambio, si se obliga a la prestación de un resultado, sin consideración al trabajo que lo crea, el arrendamiento es de obra.

Véase, además, Sentencia del 10 de febrero de 1987, Aranzadi, Repertorio de Jurisprudencia 703.

contratista realiza su trabajo "de manera independiente".[55] Por tanto, lo que éste debe al dueño no es un esfuerzo realizado sino un resultado final. Esto es consistente con lo que señala Castán Tobeñas de que la realización de la obra es meramente el medio hacia el fin de su entrega.[56]

De manera congruente, nos explica Puig Brutau que el contrato de arrendamiento de obra y el contrato de compraventa se distinguen porque en el primero el resultado entregado es una "cosa nueva" o "__recién hecha__".[57] En otras palabras, en el contrato de arrendamiento de obra el resultado entregado no puede ser una obra prefabricada genéricamente, sino que debe ser producto de un encargo

---

[55] Puig Brutau, *Op.Cit.*, p. 439.

[56] J. Castán Tobeñas, *Op.Cit.*, p. 455.

[57] Puig Brutau, *Op.Cit.*, p. 439 (Énfasis suplido). La doctrina ha profundizado en las diferencias, pero sobre todo las similitudes, entre el contrato de compraventa y el contrato de arrendamiento de obra. Muchos tratadistas enfatizan el hecho de que mientras más importancia se dé al material utilizado en la obra y menos importancia al trabajo realizado aplicarán las reglas del contrato de compraventa, particularmente cuando el material utilizado es del propio contratista. Véase M. Medina de Lemus, *Op.Cit.*, p. 145. En estos casos, muchos hablan de un contrato mixto de arrendamiento de obra y compraventa. Véase J.M. Manresa y Navarro, *Op.Cit.*, p. 914; J. Castán Tobeñas, *Op.Cit.*, pp. 454-455; J. Santamaria, *Op.Cit.*, p. 637. En particular, Castán Tobeñas explica que cierto sector de la doctrina opina "que el contrato por el cual el trabajador proporciona la materia es, por lo general, una venta de cosa futura, pero será arrendamiento de industria si los materiales sólo son lo accesorio". Castán Tobeñas, *Op.Cit.*, p. 455 (Énfasis suplido). Señala Vélez Torres que la línea diferenciadora entre el contrato de ejecución de obra y el de compraventa es "muy borrosa". Vélez Torres, *Op.Cit.*, p. 326.

particular.[58]  <u>Pero  tampoco  tiene  que  efectuarse,
necesariamente,  después  del  perfeccionamiento  del  contrato</u>,
bastará  con  que  sea  una  obra  de  recién  fabricación.  Lo
fundamental  es  que  la  prestación  principal  de  la  entrega
del  resultado  se  haga  después  de  perfeccionado  el  contrato.
Será  con  la  entrega  del  resultado  encargado,  la  recepción
de  la  obra  y  el  pago  del  precio  acordado  que  se  extinguirán
las  respectivas  obligaciones,  siempre  que  lo  entregado  se
ajuste  a  lo  encargado  en  el  contrato.[59]

Lo  anterior  está  en  sintonía  con  la  naturaleza
independiente  del  trabajo  realizado  por  el  contratista.  Por
eso  el  Código  Civil  establece  que  si  la  obra  se  destruye
antes  de  su  entrega,  la  pérdida  será  a  costa  del
contratista  y  no  del  dueño,  salvo  que  éste  haya  incurrido
en  mora  en  la  recepción  de  la  obra  o  que  el  dueño  haya
suplido  materiales  defectuosos.[60]  Antes  de  la  entrega  y
recepción,  el  <u>trabajo</u>  realizado  por  el  contratista  es  <u>suyo</u>
y  solamente  en  casos  muy  específicos  podrá  reclamar  el  pago
al  dueño  de  la  obra.[61]  Como  explica  González  Poveda:  "[S]e
entiende  que,  <u>en  tanto  no  se  produce  la  entrega,  la  cosa  es</u>

---

[58] Vélez Torres, *Op.Cit.*, p. 327.

[59] *Id.*, p. 332.

[60] Artículos 1481 y 1482 del Código Civil, <u>31 L.P.R.A. §§ 4122-4123</u>.

[61] Uno de estos escenarios es cuando el dueño desiste de la obra mientras ésta se está realizando. En estos casos, el dueño deberá abonar todos sus gastos, trabajos y utilidad que pudiera obtener de la obra. Artículo 1486 del Código Civil, <u>31 L.P.R.A. § 4127</u>.

**propiedad del contratista** por lo que éste debe correr con los riesgos de la misma de acuerdo con el principio general de derecho de que las cosas perecen para su <u>dueño</u>".[62] Según Martínez Mas, la discusión del riesgo está atada a la naturaleza propia del contrato de arrendamiento de obra que, como hemos visto, se basa más en el resultado entregado que en el trabajo empleado. Nos dice el tratadista: "La razón de que el constructor asuma los riesgos por [el] perecimiento de la obra antes de su entrega, radica en que en el contrato de obra la remuneración del constructor no es por el trabajo empleado y por los materiales incorporados a la obra, sino por la conclusión de la misma, por lo que parece lógico que soporte el riesgo de su fracaso o la pérdida de la obra casi terminada <u>o incluso acabada</u>, pero aún <u>sin ser entregada</u>".[63]

Si alguna de las partes incumple con sus respectivas prestaciones, podrán ejercer aquellas facultades que les

---

[62] González Poveda, *Op.Cit.*, p. 625 (Énfasis suplido). Esta idea surge de la máxima *res perit domino*. C. Gómez Estrada, <u>De los Principales Contratos Civiles</u>, Ed. Temis, S.A., Santa Fe de Bogotá, 1999, p. 322. Cabe clarificar que, en casos de obras sobre bienes inmuebles propiedad del comitente, la titularidad del contratista se limita a la obra en sí y no al bien sobre el que se hace. Por otro lado, si se trata de bienes muebles creados en su totalidad por el contratista, independientemente de la titularidad de los materiales utilizados, la titularidad del bien completo recaerá sobre éste.

[63] F. Martínez Mas, *Op.Cit.*, p. 27 (Énfasis suplido). Véase, además, J. Santamaria, *Op.Cit.*, pp. 636-637, J. Castán Tobeñas, *Op.Cit.*, p. 459; R. Hernández Bobadilla, *Op.Cit.*, p. 20.

otorga del derecho contractual, como pedir resolución o el cumplimiento específico de la obligación, entre otras.[64] Como manifestamos en <u>Master Concrete Corp. v. Fraya, S.E.,</u> "[u]na vez perfeccionado el contrato de arrendamiento de obras –como en todo tipo de contrato- las partes están obligadas por lo expresamente pactado".[65] Si, por ejemplo, la obra no se ajusta a lo especificado en el contrato, corresponde al tribunal de primera instancia determinar el remedio adecuado, dependiendo de la gravedad del incumplimiento.[66] Igual ocurre si determinada condición del contrato, como el periodo para llevar a cabo la obra, es de naturaleza esencial.

---

[64] *Id.* También estarán disponibles las defensas de *exceptio non adimpleti contractus* y *exceptio non rite adimpleti contractus*. Véase Puig Peña, *Op.Cit.,* p. 308. La recepción de la obra por parte del dueño requiere que ésta esté "bien terminada". *Id.*, p. 303. Véase, ademas, P. González Poveda, *Op.Cit.*, p. 687; Sentencia del Tribunal Supremo de España del 18 de abril de 1979, Aranzadi, Repertorio de Jurisprudencia 1406.

[65] *Id.,* pp. 624-625.

[66] En el caso de autos, le correspondería al Tribunal de Primera Instancia, después de interpretar el contrato y auscultar la intención de las partes, determinar si el incumplimiento con <u>la entrega de certificaciones parciales</u> constituye un incumplimiento sustancial del contrato y si, en efecto, la obra se ajusta a lo especificado en el contrato. A esos efectos, véase F. Martínez Mas, *Op.Cit.*, p. 63 y su discusión sobre las certificaciones parciales. Véase también la Sentencia del Tribunal Supremo de España del 22 de julio de 1997, Aranzadi, Repertorio de Jurisprudencia 5806. También, le corresponderá determinar si, en efecto, la obra se ajusta a lo especificado en el contrato.

IV.

En el caso de autos, el contrato de arrendamiento de obra se perfeccionó, de acuerdo a la normativa aplicable a los contratos municipales, el 16 de julio de 2002. No hay duda de que cumplió con todos los requisitos de forma dispuestos en la Ley de Municipios Autónomos y la jurisprudencia. El contratista tenía desde el 16 de julio hasta el 14 de agosto de 2002 para cumplir con su obligación contractual. Es decir, el contratista tenía que realizar la prestación de entregar la obra en ese transcurso de tiempo. En efecto, el 31 de julio, el contratista intentó entregar su obra.

El trabajo independiente realizado por el contratista antes de entregar la obra al municipio se llevó a cabo entre los días 25 y 28 de junio de 2002, aproximadamente dos semanas antes de perfeccionarse el contrato. Según se ha alegado en la demanda, el trabajo realizado en esos días corresponde a la obra señalada en la subasta 02-30, cuya buena pro se notificó el 4 de junio y en el contrato perfeccionado el 16 de julio.[67] Se alega también que la obra corresponde a lo que la doctrina clasifica como obra "recién hecha", dada la proximidad temporal entre el trabajo realizado y el perfeccionamiento del contrato, así

---

[67] Esto no quita cualquier reclamación que pueda tener el municipio en cuanto a si el cumplimiento por parte del contratista es defectuoso, incompleto o si se desvió de lo pactado. En estos momentos nos limitamos a analizar si hay causa de acción. Le corresponde al foro primario dilucidar los méritos de este caso en particular.

como el hecho de que el trabajo realizado fue el que se encargó específicamente en la subasta y en el contrato, y no una obra genérica como ocurre en la compraventa.

La prestación a la que se comprometió el contratista el 16 de julio como parte de un contrato de arrendamiento de obra era la **entrega** de la obra ya finalizada. No es necesario, como elemento constitutivo de la causa de acción, que el trabajo que produjo esa obra sea realizado después del perfeccionamiento del contrato. Basta con que la obra sea "recién hecha".[68] En este caso, el trabajo se hizo poco antes de perfeccionado el contrato. El 31 de julio, durante la vigencia del contrato, el contratista cumplió su obligación: entregó la obra encargada. Correspondía al dueño de la obra cumplir las suyas: recibir la obra y pagar el precio acordado.

La demanda en el caso de autos fue desestimada sumariamente, habiéndose alegado que no justificaba la concesión de un remedio. El Tribunal de Primera Instancia

---

[68] Soy consciente de los problemas que pueden generarse en casos en que un contratista realice su obra antes de que su contrato se ponga por escrito. Sin duda, los municipios tienen un interés importante de poder inspeccionar regularmente la obra mientras está realizando, de velar porque se estén cumpliendo con las especificaciones del contrato y de evitar que se subcontrate ilegalmente el trabajo, entre otros asuntos. No obstante, la protección de este interés no requiere concluir, de entrada y de manera absoluta, que no existe una causa de acción a favor del contratista. Lo que corresponde es examinar los méritos del caso en un juicio plenario determinar qué, cómo y cuándo se llevó a cabo el trabajo, cuáles eran las intenciones de las partes y qué relación hay entre lo contratado y lo ejecutado. Nada de lo anterior supone que el contratista debe prevalecer en los méritos, sino, meramente, que tiene derecho a su día en corte para demostrar que entregó lo que se le encargó.

no pasó prueba sobre la intención de las partes o sobre la naturaleza esencial del plazo establecido en el contrato. Se equivoca la mayoría al entrar en los méritos de la controversia y resolver que, como cuestión de hecho, el contratista incumplió con un elemento esencial del contrato, cuando no se pasó prueba a esos efectos.

Ante el hecho de que el requisito de irretroactividad no está establecido en la Ley de Municipios Autónomos, que el cumplimiento de la obligación se dio después de otorgado el contrato por escrito y que no se pasó prueba sobre la intención de las partes que permitiera concluir que se incumplió una condición esencial del contrato, revocaría la sentencia sumaria y devolvería el caso al Tribunal de Primera Instancia para la celebración del juicio en sus méritos.


                                        Liana Fiol Matta
                                        Jueza Asociada